IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:25cr79-MHT |
| | ) | (WO) |
| JAMAL GARROTT | ) | |

OPINION AND ORDER ON FIRST MOTION TO SUPPRESS

Defendant Jamal Garrott faces an indictment on two
counts of possession of a firearm by a convicted felon
in violation of 18 U.S.C. § 922(g)(1).  He filed two
motions to suppress evidence found during, and as a
result of, two different automobile searches--the first
motion based on a search in July 2024 (count one) and the
second motion based on a search in April 2025 (count
two).  This case is before the court on the recommendation
of the United States Magistrate Judge that Garrott's
first motion to suppress, based on the July 2024 search,
should be denied.  Also before the court are Garrott's
objections to that recommendation.  Upon an independent
and de novo review of the record, the court declines to

follow the magistrate judge's recommendation and agrees with Garrott that the first motion to suppress should be granted.[1]

I.

A.

*Initial Stop*: As the magistrate judge explained in his recommendation, one night in July 2024, two state special investigative agents in Montgomery, Alabama saw a car drive past with red LED lights in the passenger compartment of the car. They ran the license plate of the car and learned that the tags were expired, that Jamal Garrott was the registered owner of the car, and

---

1. By order entered on November 11, 2025, the court agreed with the magistrate judge's recommendation that Garrott's second motion to suppress, based on the April 2025 search, should be denied. *See* Opinion and Order on Second Motion to Suppress (Doc. 81) (2025 WL 3068739 (M.D. Ala. 2025)).

that Garrott was reportedly the subject of an active arrest warrant stemming from a county grand jury indictment for unlawful possession of (not distribution of or trafficking in) a controlled substance under Alabama law. The agents followed the car until backup could arrive, then stopped the car.

One of the special investigative agents approached the driver and asked for identification. The driver responded that he did not have his identification on him but said that his name was Jamal Garrott; the driver also provided his birthdate and social security number. The agent gave that information to a state trooper, who had just arrived, to run it through a database and confirm the warrant and the driver's identity.

The special agent then asked Garrott if he had any guns or drugs in the car, which Garrott denied. The agent shined a flashlight in the car and saw that there was an empty handgun holster on the floor of the car in

between Garrott's feet.  The agent asked Garrott to step
out of the car, patted him down for a weapon, and walked
Garrott to the back of his vehicle to stand with his
partner.

The special agent then went back to the vehicle and
took the holster from the car.  He looked under the
driver's seat and in the center console to make sure
there was no firearm, but did not find one.[2]   Around
this time, the state trooper confirmed the validity of
the arrest warrant.  It appears that Garrott was
handcuffed at this point.[3]

---

2. During his initial protective search of the
console, the special agent found a bag of white pills,
but one of the officers checked the pills against a chart
and determined that the pills were not controlled
substances.  The government has not contended that these
pills contributed to probable cause.

3. No definitive evidence was presented as to when
Garrott was handcuffed.  However, an agent testified that
it is standard operating procedure to place a defendant
in handcuffs as soon as a warrant is confirmed.  *See*
Transcript (Doc. 26) at 22-23.

**B.**

*The State Trooper's Further Search*: After confirming the arrest warrant, the state trooper looked under the front passenger seat and found a loaded handgun.  He then continued searching and found an AR-style charging handle for a rifle on the back seat of the car.

After the state trooper completed the search, the special agents contacted a federal law enforcement agent, who came to the site of the arrest and interviewed Garrott.  Garrott made incriminating statements during this interview.

Garrott had asked the agents to allow his girlfriend to come and get his car.  They agreed to do so, so the car was not seized.  Finally, Garrot was turned over to a local sheriff's department on the outstanding arrest warrant.

II.

Garrott moved to suppress the firearm and charging handle found during the state trooper's search of his car and all incriminating statements obtained as a result of the search.  He argued that the state trooper's warrantless search of the vehicle violated his Fourth Amendment rights under *Arizona v. Gant*, 556 U.S. 332 (2009).  He further argued that, because the federal agent would not have been called absent the evidence found in the state trooper's search, his statements to the federal agent should be suppressed.  The government responded that the state trooper's warrantless search of the car was permissible under the 'automobile exception' to the Fourth Amendment's warrant requirement.  In his recommendation, the magistrate judge agreed with the government to this extent and found that suppression should be denied because the search was permissible under this exception.  Garrott filed an objection to the

magistrate judge's recommendation that the automobile exception applied.[4]

### III.

The court, therefore, turns to the automobile exception. "The automobile exception [to the Fourth Amendment's warrant requirement] allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *United States v. Lindsay*, 482 F.3d 1285, 1293 (11th Cir. 2007).[5]  This exception to the warrant

_____

4. In response to Garrott's suppression motion, the government also argued that the state trooper's warrantless search of the car was permissible as a search incident to an arrest.  The magistrate judge rejected this argument, and there is no objection from either side to that part of the magistrate judge's recommendation. As a result, the court does not review that part of the recommendation.

5. At this this point in the litigation, the government does not put forward any argument other than that the automobile exception (which the government

requirement "applies only to searches of vehicles that are supported by probable cause. In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *United States v. Ross*, 456 U.S. 798, 809 (1982) (footnotes omitted).

Here, the car was mobile, and the only disputed question is whether the state trooper had probable cause for the search. "Probable cause for a search exists when under the totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). "Probable cause is a flexible, common-sense standard. ... A

---

agrees must be based on a finding a probable cause) to support the magistrate judge's recommendation that the state trooper's search was permissible.

'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Brinegar v. United States,* 338 U.S. 160, 176 (1949)). In other words, probable cause for a warrantless search exists where the facts and circumstances known by the officers on the scene are such that a reasonable officer could believe that a search will reveal contraband or evidence of a crime in the place to be searched. *See Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citing *Brinegar*, 338 U.S. at 175–176; *Gates*, 462 U.S. at 238).[6]

To determine whether probable cause justified a warrantless search, the court must assess "the events

_____

6. In contrast, 'reasonable suspicion' exists when there is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas*, 517 U.S. at 696 (quoting *United States v. Cortez,* 449 U.S. 411, 417–418 (1981)). The government does not argue that reasonable suspicion justified the search challenged here.

which occurred leading up to the ... search, and then ...
[decide] whether these historical facts, viewed from the
standpoint of an objectively reasonable police officer,
amount to ... probable cause." *Ornelas*, 517 U.S. at 696.


## IV.

In his recommendation, the magistrate judge found
there was a fair probability that the car would contain
evidence of a crime.   To support this finding, the
magistrate judge stated:

> "Unlawful drug users and people under felony
> indictment are prohibited from possessing or
> receiving firearms, 18 U.S.C. §§ 922(g)(3) &
> (n), and guns and drugs go together
> hand-in-hand." *United States v. Lopez*, 649 F.3d
> 1222 (11th Cir. 2011) ('[T]his Court has long
> recognized that, as Forrest Gump might say,
> drugs and guns go together like peas and
> carrots')."

Report and Recommendation (Doc. 29) at 6-7.   Thus, the
magistrate judge cited to both subparts (g)(3) and (n)
of 18 U.S.C. § 922, briefly reasoning that (1)

"[u]nlawful drug users" and (2) "people under felony indictment" are prohibited from "possessing" firearms.

Subpart (g)(3) provides, in part: "It shall be unlawful for any person-- ... who is *an unlawful user of or addicted to any controlled substance* ... to ... *possess* in or affecting commerce, any firearm or ammunition; or to *receive* any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."   18 U.S.C. § 922(g)(3) (emphasis added.) Subpart (n) provides, in part: "It shall be unlawful for any person who is *under indictment* for a crime punishable by imprisonment for a term exceeding one year to *ship or transport* in interstate or foreign commerce any firearm or ammunition or *receive* any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."   18 U.S.C. § 922(n) (emphasis added.)

**A.**

11

The court will first turn to subpart (n).  Apparently relying on this subpart, the magistrate judge stated that "people under felony indictment are prohibited from possessing or receiving firearms."  Report and Recommendation (Doc. 29) at 6.  Subpart (n) prohibits individuals under felony indictment from *receiving, shipping, or transporting* firearms while under indictment; however, there is nothing in the language of the provision to prohibit such persons from *possession* of firearms.  The word "possession" does not appear in the subpart. *See United States v. Laurent*, 861 F. Supp. 2d 71, 86 (E.D.N.Y. 2011) (Weinstein, J.) ("By omitting the word 'possession' from § 922(n), Congress intended that '[p]ersons under indictment are prohibited from receiving or transporting firearms but may continue to possess them.' H.R. Rep. No. 495, 99th Cong., 2d Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 1327, 1360.'").  Thus, it could be argued that a person who already owns

12

a gun when indicted does not violate subpart (n) by continuing to possess it; though a person under indictment might be required to give up a gun under the terms of pretrial release, but that would be a separate matter.

However, the court need not resolve this issue, for, at oral argument on the magistrate judge's recommendation and Garrott's objections to it, both the government and Garrott agreed that subpart (n) was no longer being advanced in support of the trooper's search and the magistrate judge's recommendation.[7]

---

7. In his objections to the magistrate judge's recommendation, defense counsel stated that "§ 922(n) makes it illegal for any person under indictment to possess a firearm" and, relying on *Rehaif v. United States*, 588 U.S. 225 (2019), then argued that "there is no evidence that Mr. Garrott knew he was under indictment." Objections to Recommendation (Doc. 30) at 6. After the court pointed out that the word "possession" was not in subpart (n)'s list of prohibited acts, defense counsel stated that he has made a mistake in stating that "§ 922(n) makes it illegal for any person under indictment to possess a firearm." *Id.*

## B.

### i.

The court will next turn to subpart (g)(3) of 18 U.S.C. § 922. Resolution of the suppression motion turns on this subpart. As stated, this subpart provides, in part: "It shall be unlawful for any person--...who is *an unlawful user of or addicted to any controlled substance* ... to ... *possess* in or affecting commerce[] any firearm or ammunition." 18 U.S.C. § 922(g)(3) (Emphasis added.) The question posed is whether a reasonable officer who was present during the events leading up to the state trooper's search of Garrott's car would have had probable cause to believe Garrott was at that time an unlawful user of or addicted to any controlled substance. The government responds that the answer is yes, and Garrot responds that it is no.

**14**

The government's answer is based on three pieces of information that the officers had when the Trooper started searching the car: there was an empty holster on the floor of the car between Garrott's feet; Garrott denied that he had a gun or drugs in the car; and the officers had received a report that Garrott had an outstanding arrest warrant for possession of (not distribution of or trafficking in) a controlled substance under Alabama law.

The court agrees with the government that, based on the empty handgun holster one officer saw on the floor of the car between Garrott's feet, the officers could reasonably believe that Garrott probably had a gun in the car and had lied earlier about not having one.

However, that said, it is not illegal to have a gun in a car in Alabama unless one is prohibited from possessing one. As a result, the last piece of information--the reported arrest warrant based on an

15

indictment for unlawful possession of a controlled substance--was critical to the magistrate judge's finding that probable cause supported the trooper's search of the car.

While 18 U.S.C. § 922 does not define the phrase "unlawful user ... of any controlled substance," the Eleventh Circuit Court of Appeals has repeatedly defined this phrase's meaning. In one case, the court opined that, to be an "unlawful user" under the definition in § 922(g)(3), "a defendant's unlawful use of a controlled substance must be ongoing and contemporaneous with the commission of the offense." *United States v. Bernardine*, 73 F.3d 1078, 1082 (11th Cir. 1996); *see also United States v. Edmonds*, 348 F.3d 950, 953 (11th Cir. 2003) (per curiam) ("In *Bernardine*, we held that to be an 'unlawful user of' marijuana a defendant's use must be 'ongoing and contemporaneous with the commission of

the offense.'"")).[8]  The court subsequently found that, to

be an "unlawful user," a defendant must also engage in

"regular and ongoing use of a controlled substance during

the same time period as the firearm possession."

*Edmonds*, 348 F.3d at 953.  Likewise, the Fifth Circuit

Court of Appeals has stated that, "An 'unlawful user' is

---

8. These cases interpreted the statute in the context
of applying a sentencing guideline that incorporates 18
U.S.C. § 922(g)(3) as the basis for an increased
sentence.  The relevant guideline is 2K2.1 of the U.S.
Sentencing Guidelines. As the appeals court explained,

"Section 2K2.1(a) of the Sentencing Guidelines
sets the base offense level for prohibited
transactions involving firearms.  Section
2K2.1(a)(6) provides for an enhanced offense
level of 14 if the defendant 'was a prohibited
person at the time the defendant committed the
instant offense.' U.S.S.G. § 2K2.1(a)(6).  The
commentary to § 2K2.1 defines a 'prohibited
person' by reference to 18 U.S.C. § 922(g) and
§ 922(n), and therefore includes a person 'who
is an unlawful user of or addicted to any
controlled substance.' U.S.S.G. § 2K2.1, cmt. n.
6; 18 U.S.C. § 922(g)(3)."

*Edmonds*, 348 F.3d at 953.

17

someone who uses illegal drugs regularly and in some temporal proximity to the gun possession." *United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023), *cert. granted, judgment vacated on other grounds,* 144 S. Ct. 2707 (2024), *after remand*, 124 F.4th 967, 970-71 (5th Cir. 2025) (same) (citing *United States v. McCowan*, 469 F.3d 386, 392 (5th Cir. 2006)).

Of course, the definition of "unlawful user" in the caselaw cited above addresses what is required to prove a conviction or to apply a guideline provision incorporating 18 U.S.C. § 922(g)(3). While officers are expected to know the law, probable cause to search does not require that the officers believe they will find evidence sufficient to support a conviction. Perhaps as a result, the regulations of the Bureau of Alcohol, Tobacco, Firearms and Explosives define "unlawful user" more loosely than the caselaw. The relevant regulation defines an "unlawful user" as "any person who is a *current*

18

user of a controlled substance in a manner other than as prescribed by a licensed physician."   27 C.F.R. § 478.11 (emphasis added).   The regulation explains that, "Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct."  *Id.*  The regulation goes on to provide that, "A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm.  An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the

19

most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year." *Id.* In other words, according to the regulation, at the bare minimum, an unlawful user of a controlled substance under subpart (g)(3) is a person who has been convicted or is otherwise known to have used an illegal controlled substance within the past year, or who has been repeatedly arrested for such an offense, including in the past year.

These definitions accord with the plain meaning of subpart (g)(3). The subpart's use of the present tense--prohibiting firearms possession by a person who "*is* an unlawful user" of controlled substances--makes clear that the use of drugs must be at least somewhat contemporaneous with the firearm possession to be covered by the statute. 18 U.S.C. § 922(g)(3) (emphasis added). A person who used a controlled substance one time in the

past at least a year earlier cannot reasonably be considered an unlawful drug user today.

Here, the officers had no information suggesting that Garrott had used a controlled substance recently or even within a year of the night of the arrest. The officers knew only that Garrott was the subject of an active warrant based on an indictment for possession of a controlled substance. They did not know how old the indictment was, or, more importantly, how long ago the alleged underlying drug use had occurred; indeed, the officer who testified at the suppression hearing admitted the drug use underlying Garrott's warrant could have occurred two or even three years earlier. *See* Hrg. Tr. (Doc. 26) at 17. Nor did the officer testify to having any reason to believe that Garrott was a drug addict who used illegal drugs regularly, or even that he had used

such drugs more than once.[9]  While the standard here is the belief of a reasonable officer rather than a testifying officer's subjective views, such testimony is instructive of what a reasonable officer's belief would likely be.

A warrant based on a drug-possession indictment, by itself (without any information about even when the indictment was issued or when the drug was possessed), would not indicate that the defendant's use was "ongoing and contemporaneous with the commission of the offense," *Edmonds*, 348 F.3d at 953, or that "the unlawful use ha[d] occurred recently enough to indicate that the individual

────────────────

9. Indeed, the record does not indicate that the officers knew the nature of the illegal drug underlying the indictment.  Unlawful possession of a controlled substance under Alabama law covers simple possession of a scheduled controlled substance, including everything from cough syrup with codeine to marijuana to fentanyl, with varying levels of addictiveness; it also includes the offense of obtaining prescription medication by deceitful means.  *See* Ala. Code § 13A-12-212.

[was] actively engaged in such conduct," 27 C.F.R. § 478.11; the warrant could support nothing more than guesswork as to such.[10]  Based solely on the existence of the warrant, any belief that Garrott had engaged in current, recent, or ongoing use of an illegal drug would amount to mere speculation.  Or, simply put, any effort to say *when* Garrott had last used an illegal drug would be no more than a guess.[11]  And, therefore any notion an

_____

10. Moreover, it should be remembered that the indictment was based on drug possession, not drug distribution or trafficking, which could conceivably, by itself, be indicative of continuing or ongoing conduct.

11. During the suppression hearing before the magistrate judge, one of the special investigative agents who approached Garrott, Special Agent Tucker, explained, "If he's got a warrant for--outstanding warrant for possession of a controlled substance, he's not allowed to have a gun and drugs."  Hrg. Tr. (Doc. 26) at 13. Because the government has not provided a reasonable basis for a belief anchored on when the indictment came down, it is essentially agreeing with this reading of subpart (g)(3), that is, that a defendant cannot possess a gun as long as the warrant is outstanding.

officer might have that Garrott had committed a subpart (g)(3) violation—and, most importantly, that a search of the car would therefore produce evidence of such an offense--would be based on only guesswork and would be insufficient to support probable cause.[12]

---

Moreover, a reading of subpart (g)(3) unanchored to evidence of reasonably recent or reoccurring illegal drug use (with probable cause correspondingly based on a reasonable belief of a "fair probability" of such) would not only be contrary to Eleventh Circuit law, it could also raise serious Second Amendment issues. *See United States v. Daniels*, 124 F.4th 967 (5th Cir. 2025); *see also id. at* 980 (Higginson, J., concurring) (stating that a subpart (g)(3) conviction is constitutional when "the temporal nexus is one of contemporaneity—meaning the jury found that the defendant possessed a firearm while presently (that is, actively) using controlled substances unlawfully").

12. It is common knowledge in this judicial district that it usually takes one to two years to complete testing of narcotics by Alabama's state drug lab in Montgomery, where drugs from Elmore County--the source of the drug-possession warrant for Garrott--are sent, and cases are not indicted until after the lab work comes back. *See* Cailey Wright, *Faster Justice: New Forensic Drug Lab Opens in Dothan*, Wiregrass Daily News (Aug. 18, 2025, at 1:50 PM CDT), https://wiregrassdailynews.com/news/alabama/2025-08-18/faster-justice-new-forensic-drug-lab-opens-

---

in-dothan/ ("Officials said the lab will speed up drug testing results, which currently can take up to two years when evidence must be sent to Montgomery. The new facility is expected to cut that wait time in half, allowing prosecutors to move cases more quickly through grand juries and circuit courts."); Smith, Robert, *State Forensic Drug Lab Opens in Dothan; Expected to Speed Up Drug Case Prosecution*, WDHN (Aug. 18, 2025, 06:54 PM CDT), https://www.wdhn.com/news/state-forensic-drug-lab-opens-in-dothan-expected-to-speed-up-drug-case-prosecution/ (noting that 12-24 months are typically required for drug-testing results from Alabama's drug lab); *Montgomery Regional Laboratory,* ALABAMA DEPARTMENT OF FORENSIC SCIENCES, https://www.adfs.alabama.gov/labs/labs-montgomery (last accessed on Sept. 5, 2025) (noting that the Montgomery drug lab covers Elmore County). Typically, during the year when the search occurred, there was a one-to-two-year delay between submission of evidence to the drug lab and completion of drug testing by the lab. *See* Fed. R. Evid. 201 (setting requirements for judicial notice). Moreover, any time between the initial confiscation of illegal drugs and delivery to the lab, as well as any time between receipt of lab results and presentation of those results to the grand jury, would add additional delay.

Given this well-known testing delay, a reasonable officer in Montgomery, Alabama in 2024 could not assume, based on the existence of an indictment and related warrant for possession of a controlled substance, that the person under indictment had possessed illegal drugs recently, or even in the last year. Such a reasonable officer could assume only that the drug possession had

ii.

Garrott also argues that reliance on the pending
indictment for a finding of probable cause to search is
improper because probable cause to search must be based
on information suggesting that evidence of a crime will
be present at the time of the search, and here the warrant
was stale.

The staleness doctrine ordinarily arises in the
context of warrant applications. The staleness analysis
"focuses on one relevant part of the determination that
reasonable probable cause exists to warrant the issuance

_____

occurred *at least* one to two years prior to the
indictment's issuance.

The court does not offer these comments to indicate
when the indictment against Garrott likely came down, but
instead to show that it would be speculative for an
officer knowing only that an Alabama drug-possession
warrant existed to even try to say when a defendant had
last used illegal drugs. Therefore, no reasonable
officer could conclude based on the existence of the
indictment, without additional information, that Garrott
was currently a user of an illegal controlled substance.

26

of an order to perform a wiretap or make a search. Out-of-date information as to a single transaction could be seen to describe no more than an isolated event in the past.  Such an affidavit would not create probable cause to believe that similar or other improper conduct is continuing to occur.  On the other hand, information which demonstrates a chain of related events covering a broad span of time continuing to the current period may furnish a most reliable indicia of present activity, thereby clearly demonstrating that probable cause exists for the order to intrude."  *United States v. Weinrich*, 586 F.2d 481, 491 (5th Cir. 1978)[13]; *see also* United *States v. Bervaldi*, 226 F.3d 1256, 1264-65 (11th Cir.

---

13. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2000).  "There is no particular rule or time limit for when information becomes stale."  *Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000) (citing *United States v. Harris,* 20 F.3d 445, 450 (11th Cir. 1994)).  Instead, courts deciding whether information is stale consider the amount of time that has elapsed, "the 'nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched.'" *Id*. (quoting *Harris,* 20 F.3d at 450; citing *United States v. Haimowitz,* 706 F.2d 1549, 1555 (11th Cir. 1983)).  *See also United States v. Bascaro*, 742 F.2d 1335, 1345-46 (11th Cir. 1984) ("In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime. The circuits hold that where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if

an affidavit recites activity indicating protracted or
continuous conduct, time is of less significance."
(citation omitted) (abrogated on other grounds by *United
States v. Lewis*, 492 F.3d 1219 (11th Cir. 2007)); *United
States v. Boozer*, 511 F. Supp. 3d 1128, 1136 (D. Or.
2021) (Aiken, J.) ("Probable cause is not stale 'if there
is sufficient basis to believe, based on a continuing
pattern or other good reasons, that the items to be seized
are still on the premises.'") (quoting *United States v.
Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013)).

Admittedly, the staleness doctrine is not an exact
fit for the facts in this case. Nevertheless, the
underlying rationale for the doctrine is instructive in
any determination of probable cause, and provides a
useful analytical approach. Probable cause to search
exists only when the police have reason to believe that
evidence of crime will be found in the place to be
searched at the time of the search. Whether information

about past events provides probable cause to search depends on how strongly the past event suggests that evidence will be in the place to be searched at the present time.

Here, the evidence in the possession of the officers was that Garrott was indicted for possessing a prohibited controlled substance at some unknown point in the past.[14] The officers had not the vaguest idea of when the underlying conduct was alleged to have occurred. The officers had no reason to believe that Garrott was indicted for keeping illegal drugs in his car, which could suggest he might do so again. Nor was he indicted for drug conspiracy, which could suggest ongoing drug-related activity. Therefore, the indictment did not tend to suggest that drugs would be found in the car on the

_____

14. The statute of limitations for prosecution of simple possession of a controlled substance is five years after commission of the offense. *See* Ala. Code § 15-3-1; *see also* Ala. Code § 15-3-5.

night in question.  Moreover, as discussed earlier, given the unknown age of the conduct underlying the indictment, the one prior alleged incident of drug possession at some point in the past was not a sufficient basis for a reasonable officer to believe that that Garrott was an unlawful drug user on the night in question who therefore was prohibited from possessing a firearm.  Accordingly, a reasonable officer would not have probable cause to believe that a search would turn up evidence of a crime.

Police conducting a warrantless search must have probable cause to believe they will find contraband or evidence of a crime in the place to be searched at the time of the search.  Reasonable suspicion is not enough. Here, looking at the totality of the circumstances, a reasonable officer could have suspected that there was a gun in the car based on the presence of the empty holster by Garrott's feet and accordingly that Garrott's denial of having a gun in the car was untrue.  However, as

31

stated, gun possession is not a crime unless one is prohibited from possessing a gun. An officer could have suspected or had a hunch that Garrott might be an unlawful drug user on the night in question after learning about the pending indictment. But, as explained above, to turn the hunch into probable cause, the officer would have needed information about when the alleged drug possession underlying the indictment occurred; the mere existence of the indictment, without any other information indicating that Garrott was currently a user of unlawful drugs, simply did not provide enough information to create a fair probability that evidence of a violation of subpart (g)(3) would be found in Garrott's car. In other words, although the officers had reason to suspect there was a gun in the car, they lacked a sufficient reason to believe that Garrott was prohibited from possessing it. Nor was there probable cause to believe

that a search would reveal the presence of contraband in the car based solely on the pending indictment.[15]

_____

15. In support of denying the suppression motion, the magistrate judge stated that "guns and drugs go together hand-in-hand." Report and Recommendation (Doc. 29) at 6-7 (citing *United States v. Lopez*, 649 F.3d 1222 (11th Cir. 2011)). The court sees a problem with the application of this reasoning here. It must be remembered that alleged drug possession, not drug distribution, is the basis of the warrant against Garrott. While it seems accurate to say that guns and *drug trafficking* go together hand-in-hand, the court cannot agree that mere illegal drug *possession* has such a close relationship with guns. Unlawful possession of a controlled substance under Alabama law covers simple possession of a scheduled controlled substance, including, as stated, everything from cough syrup with codeine to fentanyl; it also includes the offense of obtaining prescription medication by deceitful means. *See* Ala. Code § 13A-12-212. People in all walks of life--from students to truck drivers to doctors to CEOs and future presidents--illegally possess controlled substances or use deceit to obtain prescriptions, and it is not at all obvious that they are likely to possess guns to facilitate their drug possession. Indeed, the part of *Lopez* cited by the magistrate judge focused on the link between a defendant's charged possession of a firearm as a felon and his multiple drug-*trafficking* charges, and the cases cited in *Lopez* for the link between drugs and guns all involved drug distribution. *See United States v. Lopez*, 649 F.3d 1222, 1242 (11th Cir. 2011) ("this Court has long recognized that, as Forrest

\*\*\*

Accordingly, it is ORDERED as follows:

(1) The objections (Doc. 30) are sustained.

(2) The recommendation of the United States Magistrate Judge (Doc. 65) is rejected.

(3) The motion to suppress (Doc. 14) is granted.

DONE, this the 12th day of November, 2025.

　　　　　　　　　　　　/s/ Myron H. Thompson
　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

Gump might say, drugs and guns go together like peas and carrots.")) (citing *United States v. Hromada*, 49 F.3d 685, 689 (11th Cir. 1995) ("Guns and violence go hand-in-hand with illegal drug operations.")); *United States v. Martin*, 794 F.2d 1531, 1533 (11th Cir. 1986) (noting that guns "are 'tools of the trade' in drug trafficking")).